# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

TOMMY VERNELL TAYLOR,

        Defendant-Appellee.

UNPUBLISHED
September 15, 2016

No. 326741
St. Clair Circuit Court
LC No. 14-002402-FH

Before: CAVANAGH, P.J., and SAAD and FORT HOOD, JJ.

PER CURIAM.

The prosecutor appeals by right defendant's sentence of one year in the county jail following his jury conviction of operating a motor vehicle while intoxicated (OWI) causing death, MCL 257.625(4)(a). We remand for further sentencing proceedings consistent with this opinion.

On June 3, 2014, defendant struck and killed a bicyclist while driving his motor vehicle that night. Defendant was arrested at the scene, where he failed field sobriety tests and admitted that he had been drinking. A subsequent blood test confirmed that defendant was under the influence of alcohol. And, following a jury trial, defendant was found guilty as charged.

Prior to sentencing, defendant filed a memorandum requesting a downward departure from the recommended sentencing guidelines range of 29 to 57 months. Defendant argued that substantial and compelling reasons existed because: (1) numerous people wrote to the court on his behalf evidencing strong family and community support; (2) he had been employed for 15 years at DTE, climbing through the ranks, and had a strong work ethic; (3) he was enrolled in the engineering program at the University of Michigan to complete his degree; (4) he had no criminal record; (5) he had Homeland Security clearances while working at a power generating utility company; (6) he had shown remorse; (7) he did not flee the scene of the accident and called 911; (8) he had not drank alcohol since the accident and was on an alcohol tether; (9) he was a role model to others; (10) he cooperated with police in this matter; (11) speed was not a factor in the accident and the victim was struck on the roadway while he was riding a bicycle at night without the proper red reflector; and (12) he was not a threat to the community. Defendant requested the court to consider the totality of the circumstances and render a non-prison sentence. More specifically, defendant requested incarceration in the county jail not to exceed one year, with a work pass to his employment at DTE.

-1-

The prosecution responded to defendant's sentencing memorandum, arguing that defendant's purported justifications for a downward departure were insufficient because: (1) numerous people submitted letters describing the victim and their loss arising from his death; (2) "legal occupation" is not a reason to depart from the guidelines; (3) having an education does not warrant a departure from the guidelines; (4) defendant's criminal history was already considered in the guidelines; (5) this felony conviction would likely jeopardize any Homeland Security clearance defendant may have had; (6) "remorse" is not an objective factor and cannot support a downward departure but, further, throughout his trial defendant blamed the victim as being grossly negligent; (7) the fact that defendant did not flee the scene and that he called 911 was not compelling considering the number of witnesses to this incident; (8) whether defendant drank alcohol before he had the alcohol tether is unknown and in any case not an objective reason for a downward departure; (9) whether defendant was a role model was unknown but the victim was a well-respected man who was looked up to by his young daughter, nieces, and nephews; (10) defendant did not cooperate with police because he refused to take a breathalyzer or blood test upon request by police; (11) there were no mitigating circumstances related to the accident, particularly with regard to the victim's bicycle being properly lit or equipped because the jury clearly held that it was defendant who caused the victim's death and not the victim or his bicycle; and (12) review of defendant's driving record revealed that he had speeding violations in 2007, 2008 and 2010, as well as a failure to yield ticket in 1999 and a sudden acceleration ticket in 2004. The prosecution requested the trial court to find that there were no substantial and compelling reasons to depart from the recommended guidelines sentencing range of 29 to 57 months. The prosecution argued that if defendant was merely sentenced to jail with a work pass, such a sentence would be more appropriate for a conviction of OWI that did not cause death— which would be disproportionate.

At the sentencing hearing, the parties made arguments consistent with their briefs. Following the arguments, the trial court noted that defendant: (1) was 38 years old, (2) had no criminal record, (3) had no alcohol-related driving offenses, (4) was employed by DTE for over 15 years and held the position of senior power plant operator, (5) completed at least three years of instruction at the University of Michigan, (6) owned his own home, (7) had strong family support as evidenced by the numerous people in the court room, (8) had strong community support as evidenced by about 25 or so letters the court received, including one from a pastor of note, (9) appeared to have significant rehabilitative potential, (10) had not consumed alcohol since this accident, (11) had submitted proof that he had no alcohol use disorder, and (12) the police all testified that defendant was cooperative after the tests had been performed. The court noted that, considering all of these facts and all of the circumstances in this case, it believed that a significant period of incarceration was in order, which could be accomplished by a downward departure from the sentencing guidelines. The court then sentenced defendant to one year in the county jail, without a work release pass for at least the first six months, as well as five years of probation. The court noted that this was not a lenient sentence and would place significant restrictions on defendant. Moreover, being in jail for a year was not an easy sentence for a person of defendant's background, education, and professional work experience. "[T]his is a true and significant punishment." And probation was not easy the court noted; defendant's "freedom and actions will be under a microscope for five years with the threat of prison hanging over his head, the chance of going to prison at any time should he violate." The court noted that "[i]n many ways this is more severe than sending somebody to prison and then having it done with." And one of the terms and conditions of probation, among many others, would be that

defendant not consume alcohol, a violation of which would result in prison. Thereafter, the sentencing hearing concluded.

On appeal, the prosecution argues that the trial court erred in imposing an unreasonable sentence of one year in the county jail where the sentencing guidelines range was 29 to 57 months in prison.

As the prosecution notes, in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), our Supreme Court struck down the requirement that a sentencing court articulate a substantial and compelling reason for rendering a sentence that departs from the applicable guidelines range. *Id*. at 364-365. And, while sentencing courts are not bound by the applicable sentencing guidelines range, they still must "continue to consult the applicable guidelines range and take it into account when imposing a sentence." *Id*. at 392. Further, in order to facilitate appellate review, sentencing courts must justify their sentencing decisions. *Id*. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness," and resentencing will be required when a sentence is unreasonable. *Id*. However, the *Lockridge* Court did not elaborate on the "reasonableness standard."

In *People v Steanhouse*, 313 Mich App 1, 46-47; 880 NW2d 297 (2015), this Court adopted the "principle of proportionality" test set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), to review the reasonableness of a departure sentence. Under that test, "a given sentence [could] be said to constitute an abuse of discretion if that sentence violate[d] the principle of proportionality, which require[d] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 45, quoting *Milbourne*, 435 Mich at 636. In other words, the trial court is required to impose a sentence that considers both the nature of the offense and the offender's background. *Id*., quoting *Milbourne*, 435 Mich at 651.

As further explained in *People v Masroor*, 313 Mich App 358; 880 NW2d 812 (2015), "*Milbourn* instructs that departure sentences 'are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing' so that the sentence range calculated under the guidelines 'is disproportionate, in either direction, to the seriousness of the crime.' " *Id*. at 374, quoting *Milbourne*, 435 Mich at 657. Moreover, the "*extent* of the departure must also satisfy the principle of proportionality." *Id*., citing *Milbourne*, 435 Mich at 660.

In this case, defendant was sentenced before the "substantial and compelling reason" standard was overturned by *Lockridge*. In *Steanhouse*, we held that, where a defendant was sentenced to a downward departure sentence before the "substantial and compelling reason" standard was overturned and thus where the trial court was not bound by the "principle of proportionality" reasonableness standard at the time of sentencing, the matter should be remanded for a *Crosby*[1] procedure "to determine what effect *Lockridge* would have on the defendant's sentence, so that it may be determined whether any prejudice resulted from the

---

[1] *United States v Crosby*, 397 F3d 103, 117 (CA 2, 2005).

error." *Steanhouse*, 313 Mich App at 48, quoting *People v Stokes*, 312 Mich App 181, 200-201; 877 NW2d 752 (2015). Accordingly, this case must be remanded to the trial court for a *Crosby* proceeding.

We note the prosecution's argument that the sentence imposed "was unreasonable in light of the Defendant's crime." But irrespective of whether the trial court inadvertently satisfied or did not satisfy the *Milbourn* principle of proportionality test, "[t]he Court's language in *Steanhouse* leaves little room for deferential review" of the proportionality of a sentence imposed before *Lockridge* was decided. *Masroor*, 313 Mich App at 377. Because when the trial court sentenced defendant it "was unaware of, and not expressly bound by, a reasonableness standard rooted in the *Milbourn* principle of proportionality," we are required to remand the matter to the trial court pursuant to the *Crosby* remand procedure. *Steanhouse*, 313 Mich App at 48; see also *Masroor*, 313 Mich App 377-378; *People v Shank*, 313 Mich App 221, 226; 881 NW2d 135 (2015).

Because the prosecution is the party challenging the trial court's departure sentence, on remand the prosecution may "elect to forego resentencing" by informing the trial court that resentencing will not be sought. See *Steanhouse*, 313 Mich App at 49; *Lockridge*, 498 Mich at 398. If resentencing occurs, the trial court must justify the extent of any departure sentence and explain why the sentence imposed is proportionate to the seriousness of the offense, taking into account defendant's background and any mitigating factors. See *Masroor*, 313 Mich App 377-378.

We remand for further sentencing proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Henry William Saad
/s/ Karen M. Fort Hood

-4-